**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| HOLLY HENDRICKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELEVANCE HEALTH INC.; RETIREMENT COMMITTEE OF ATH HOLDING COMPANY, LLC; SEAN GRAY; and JOHN DOES 1-30,<br><br>Defendants. | Civil Action No. 1:25-cv-1002 |

## CLASS ACTION COMPLAINT

Plaintiff Holly Hendrickson ("Plaintiff"), by and through her attorneys, on behalf of the Elevance Health 401(k) Plan (the "Plan"), herself and all others similarly situated, state and allege as follows[1]:

## INTRODUCTION

1.     This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include Elevance Health Inc. (the "Company"), ATH Holding Company, LLC ("ATH"), the Retirement Committee of ATH Holding Company ("Committee") and its

---

[1] Importantly, while the Plan is a legal entity that can sue and be sued, *see* ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1), in a breach of fiduciary duty action such as this and pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants. In short, the Plan is not a party to this action. Rather, this action is brought for the benefit of the Plan and its participants.

members during the Class Period[2], and the individuals serving as "Plan Administrator" during the Class Period, including but not limited to Sean Gray, for breaches of their fiduciary duties.

2. Plaintiff alleges that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan and its participants including Plaintiff.

3. As set forth herein, Defendants violated ERISA through their failing to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(A)(ii). Specifically, Defendants' failure stems from the use of Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for Plan administrative expenses and costs.

4. Defendants' mismanagement of the Plan -- using forfeited funds to the Company's benefit rather than "for the exclusive purpose of providing benefits to participants and their beneficiaries" -- constitutes a breach of the fiduciary duty, including 29 U.S.C. § 1104(a)(A)(i).

5. Due to Defendants' conduct, they violated ERISA in multiple ways. As set forth below, Defendants: (i) breached ERISA's fiduciary duty of prudence (Count I); (ii) breached ERISA's fiduciary duty of loyalty (Count II); (iii) breached ERISA's Anti-Inurement provision (Count III); (iv) failed in their duty to monitor certain of the Plan's fiduciaries (Count IV); and (v) violated ERISA's prohibition on self-dealing (Count V).

6. Defendants' actions were contrary to actions of a reasonable fiduciary in like circumstances and cost the Plan and its participants millions of dollars.

---

[2] The Class Period is defined as six years preceding the filing of this Action through the date of judgment ("Class Period").

## SUMMARY OF CLAIMS

7.     Plaintiff brings this action as a nationwide class action to recover damages suffered due to Defendants' breaches of their fiduciary duties.

8.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time during the Class Period.

9.     Plaintiff alleges on behalf of the Class that Defendants violated ERISA by failing to act with an eye towards the interests of the Plan's participants and beneficiaries. As set forth herein, rather than act in the best interests of the Plan's participants and beneficiaries, Defendants in their fiduciary capacity acted in the interests of the Company by using funds from forfeited accounts to defray the Company's costs instead of using such funds to reduce the Plan's administrative expenses and thus lower the expenses and costs to the Plan's participants and beneficiaries.

10.     Notably, this was done when Elevance Health was experiencing sustained growth in its revenue and thus a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

11.     Plaintiff asserts that Defendants' conduct concerns the Plan's management and operation -- and not any conduct concerning the design, establishment, or modification of an employee benefit plan. Stated another way, the conduct complained of herein concerns Defendants' conduct as the Plan's fiduciaries and not as the Plan's settlor.

12.     Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design when they chose to exercise discretion in the use of forfeited funds for the benefit of the Company through reducing employer contributions

rather than solely in the interest of the participants and beneficiaries through the use such funds to reduce Plan expenses.

## PARTIES

**PLAINTIFF**

13.    Plaintiff Holly Hendrickson ("Plaintiff") resides in the State of Colorado. Plaintiff is a participant in the Plan. As such, Plaintiff has standing to bring this action on behalf of the Plan because she participated in the Plan and was injured by Defendants' unlawful conduct.

14.    Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**DEFENDANTS**

### *Company Defendants*

15.    Elevance Health ("Elevance") is a leading health company for whom its employees are eligible to be participants in the Plan and, upon information and belief, a named fiduciary for the Plan.

16.    According to the Company's most recent Form 10-K Annual Report for fiscal year ending December 31, 2024 ("2024 10-K"), Elevance is one of the largest health insurers in the United States in terms of medical membership, serving approximately 45.7 million medical members through our affiliated health plans as of December 31, 2024.[3]

17.    According to the Summary Plan Description ("SPD") of the Plan, the Retirement Committee of ATH Holding "is the primary Plan fiduciary."

---

[3] *See* 2024 10-K at 3.

18.     Consequently, upon information and belief, Elevance appointed individuals to serve on the Retirement Committee of ATH Holding (the "Committee"). Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

19.     Accordingly, Elevance was a fiduciary of the Plan during the putative Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it had a duty to monitor the actions of the Committee.

20.     For the foregoing reasons, Elevance is a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

***Committee Defendants***

21.     As discussed above, the Committee, among other things, serves as the Plan's and Administrator and thus serves as the primary fiduciary.

22.     Moreover, as set forth in the SPD, the Committee "has full discretionary authority to administer and interpret the Plan."

23.     Further, as forth in the SPD, the Committee may "delegate its duties and discretionary authority to others to accomplish [its] duties."

24.     Under ERISA, fiduciaries who delegate their power have the fiduciary duty to monitor and supervise their delegees.

25.     For the foregoing reasons, the Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

26.     The Committee and the unnamed members of the Committee during the Class Period are collectively referred to herein as the "Committee Defendants."

***Plan Administrator Defendants***

27.     According to the SPD, the Plan Administrator handles most day-to-day Plan operations, including but not limited to, processing formal procedures to file a claim for benefits and handling appeals over denied claims.

28.     As such, the Plan Administrator and each individual who served as such were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

29.     Sean Gray was identified as the "Plan Administrator" according to the 2022 and 2023 Form 5500.

30.     The Plan Administrator and the named and unnamed individuals who served as Plan Administrator during the Class Period are collectively referred to herein as the "Plan Administrator Defendants."

***Additional John Doe Defendants***

31.     To the extent that there are additional officers, employees and/or contractors of Elevance who are/were fiduciaries of the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserves the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 1-10 include, but are not limited to, Committee members, Plan Administrators, and/or Elevance officers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, et seq.

33.    This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

34.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

### ERISA'S OBLIGATIONS

35.    To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries.

36.    "ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996) (quoting ERISA § 404(a), 29 U.S.C. § 1104(a)(1)).

37.    The Supreme Court has held that "ERISA plan fiduciaries must discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. §1104(a)(1)(B)).

38.    A fiduciary's duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F. 2d 263, 272 n.8 (2d Cir. 1982). Further, a fiduciary's duties are "derived from the common law

of trusts" which, consequently, requires courts to "look to the law of trusts." *Tibble v. Edison Int'l*, 575 U.S. 523, 528-29 (2015).

39.     Importantly, a fiduciary must discharge their duties "in accordance with the documents and instruments governing the plan" only "insofar as such documents and instruments are consistent with the provisions" of ERISA's duty of prudence. 29 U.S.C. §1104(a)(1)(D).

40.     As set forth herein, Defendants breached these well-established fiduciary duties.

**PLAINTIFF**

41.     Plaintiff is a participant in the Plan. As a Plan participant, Plaintiff was required to pay fees associated with her Plan account.

42.     As such, Plaintiff suffered injury because Defendants failed to use forfeited Plan funds to pay Plan administrative expenses, which would have reduced or eliminated the amounts charged to Plaintiff's individual account.

**THE PLAN**

43.     The Plan is a "defined contribution plan which was established to provide savings opportunities for eligible employees of Elevance Health, Inc. ("Elevance Health") and certain of its subsidiaries (the "Participating Employers"). The purpose of the Plan is to help employees save for retirement and other long-range financial goals."[4]

44.     Thus, the Plan is a "defined contribution" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).[5]

45.     According to the most recent Summary Plan Description ("SPD") of the Plan, ATH Holding, LLC ("ATH") serves as the Plan Sponsor. Notably, ATH is an Indiana limited liability company that is a wholly-owned subsidiary of Elevance Health.

---

[4] *See* 2023 Form 5500, *Notes to the Financial Statements* at 6.
[5] *See* SPD at 51.

46.     Individuals are eligible to participate in the Plan 30 days after their date of hire if they are a full-time, part-time, or temporary Associate employed by any of the Participating Employers.

47.     The Plan also provides for automatic enrollment for those employees who started participating on or after January 1, 2019 (whether as a new hire or rehire) or have not made an affirmative contribution election under the Plan. The Plan Administrator will enroll the employee automatically within approximately 40 to 50 days after their first day of work, depending upon where their start date falls in the Elevance Health payroll cycle.

48.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund that is separate from Elevance's assets and managed by Fidelity Investments.

49.     According to the "Statement of Net Assets Available for Benefits" for the year ending December 31, 2023, the Plan had $11,043,122,412 in net assets. *See* 2023 Form 5500.

50.     The Plan is funded by a combination of wage withholdings by Plan participants and Company contributions.

51.     There are several types of contributions that can be added to a participant's account, including: an employee salary deferral contribution, a Roth 401(k) contribution, an employee after-tax contribution, catch-up contributions for employees aged 50 and over, rollover contributions, and employer matching contributions based on employee pre-tax, Roth 401(k), and employee after-tax contributions.[6]

52.     The Plan also provides for employer matching contributions of up to 5% of a Plan participant's eligible earnings.

---

[6] *See* SPD at 7-9.

53.     Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

***Vesting***

54.     With regard to contributions made by a participant to the Plan, the participant is always fully vested in pre-tax contributions, Roth 401(k) contributions, after-tax contributions, rollover contributions, and any investment results earned by those contributions.[7]

55.     With regard to employer matching contributions and employer supplemental basic contributions, participants become 100% vested after two years of service.[8]

56.     Notwithstanding the two years of service requirement, a participant will become fully vested in the company matching contributions and related investment results if they are actively employed at the time of their death, disability, or the attainment of age 65.[9]

***Forfeited Accounts***

57.      If a Plan participant terminates their employment before becoming fully vested, they will forfeit any unvested matching contributions made by the Company to their account.

58.     According to the Plan's Form 5500, "[F]orfeitures are used as directed by the Plan Sponsor to reduce future employer contributions or to pay certain administrative expenses."[10]

59.     Those Plan terms with respect to forfeited funds present Defendants with a clear conflict of interest.

---

[7] *See* SPD at 11.
[8] *Id*.
[9] *Id*.
[10] *Supra* note 4 at 8.

60.     During 2023 Defendants, in their fiduciary capacity, used forfeitures of $9,558,247 to offset employer contributions and forfeitures of only $281,982 were used to pay administrative expenses.[11]

61.     Using forfeitures to reduce the cost of the Company's contributions to the Plan would save, and has saved, the Defendants millions of dollars.

62.     Yet, so long as there is no risk that Elevance would be otherwise unable to financially satisfy its contribution obligations to the Plan, such a use of forfeitures would be solely in the best interest of Elevance.

63.     Conversely, using forfeitures to pay Plan expenses would almost always inure to the benefit of the Plan participants, by reducing or eliminating the amounts charged to their individual accounts to otherwise cover those expenses.

64.     Upon information and belief, despite both the clear conflict of interest faced by Defendants and their legal fiduciary duty, Defendants failed to make any real effort to resolve that conflict of interest in a manner that would best serve the interests of the Plan participants.

65.     Indeed, Defendants abdicated their duty of prudence by failing to undertake any type investigation into which use of the forfeited funds was in the best interest of the Plan participants.

66.     Nor did Defendants engage any independent consultant to advise them on the best course of action for allocating forfeitures, as a prudent person would have.

67.     While ERISA requires Defendants to defray the Plan's expenses, 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan permits Defendants to use forfeitures to pay Plan expenses, Defendants failed to use any forfeitures for that purpose throughout the Class Period.

---

[11] *Id.*

68.    Instead, Defendants used the forfeitures to offset Elevance's contribution obligations to the Plan, despite there being no risk that Elevance would be unable to otherwise financially satisfy its contribution obligations to the Plan.

## THE COMPANY'S FINANCIAL PERFORMANCE

69.    During the Class Period, the Company experienced positive financial performance.

70.    For example, total revenues for Elevance's consolidated Statement of Income shows an increase of almost 15% for the 3 months ended March 31, 2025, compared to the First Quarter of 2024, $42.57 billion to $48.8 billion.[12]

71.    For the First Quarter ending March 31, 2025, the Company announced an adjusted operating gain of $3.3 billion, up 4.1% from 1Q 2024.[13]

72.    In the same earnings release, the Company announced that Adjusted diluted Earnings Per Share was $11.97, an increase of more than 10%.[14] .

73.    Throughout the Class Period, Elevance achieved similarly positive financial results

74.    Elevance's total revenues increased $20.4 billion or 12.7% from December 31, 2022 to December 31, 2024.[15]

75.    Shareholder's Earning per Share increased from $24.28 in 2022 to $28.81 at December 31, 2025.[16]

76.    In 2021, the Shareholder's Net Income was $6.1 billion, an increase of approximately $1.6 billion from 2020.[17]

---

[12] *See Q1 2025 Earning Release*, https://www.elevancehealth.com/newsroom/elv-quarterly-earnings-q1-2025 (last visited May 12, 2025).
[13] *Id.*
[14] *Id.*
[15] *See* Elevance 10K for Year End 12/31/24.
[16] *Id*.
[17] *Id*.

77.    Importantly, the Company had almost $3.8 billion in Cash and Cash Equivalents as of December 31, 2024, an increase of almost $1.3 billion from December 31, 2023.

78.    Thus, during the years of the putative class period, Elevance had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan.

79.    Yet, despite this significant financial performance, Defendants consistently acted solely in their own self-interest, and in violation of their fiduciary duty to the Plan participants, by improperly using Plan forfeitures for the benefit of the Company by disproportionately reducing the Company's Plan contributions rather than using the majority of the forfeiture balance to reduce administrative expenses.

80.    In 2023, Defendants used Plan forfeitures to reduce the Company's contribution obligation by approximately $9.5 million while only applying $281,982 to offset Plan expenses of approximately $6.1 million.

81.    Similarly, in 2022, Defendants used Plan forfeitures to reduce the Company's contribution obligation by approximately $8.9 million while only applying $801,910 to offset Plan expenses of approximately $6.2 million.

82.    In 2021 Defendants used Plan forfeitures to reduce the Company's contribution obligation by approximately $5 million while only applying approximately $3 million to offset Plan expenses of approximately $8.4 million.

83.    In 2019 Defendants used Plan forfeitures to pay $199,183 of Administrative expenses with no funds expended for the Company's contributions. In the notes to the financial statements attached to the Form 5500, the Plan states "[T]he Plan intends to direct a substantial portion of the remaining funds to reduce the quarterly administrative fee paid by each participant who has a current Plan account balance."

84.    Despite this language, Defendants began to use the forfeitures to a greater extent for the Company's benefit by using a larger portion of the forfeiture balance towards the Company's contributions rather than reducing the administrative fees paid by the Plan participants.

85.    Based on information gleaned from the Plan's Form 5500 for the years 2021 through at least 2023 through 2024, over $23 million was improperly steered from paying Plan administrative costs and instead used to benefit the Company.

86.    During the same period, the Plan incurred over $20 million in administrative expenses.

87.    By using forfeitures during the Class Period primarily to benefit the Company by reducing its Plan contributions, Defendants failed in their fiduciary duty to Plan participants by causing deductions from their individual accounts to cover expenses that otherwise could have been covered by forfeitures.

88.    In contrast, given the Company's significant financial performance, a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

89.    Defendants, at their own discretion, effectively placed their own interests above the interests of the Plan and its participants and caused harm to the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur at least $20 million in expenses that could otherwise have been covered in whole or in part by forfeited funds.

## DEFENDANTS' BREACH OF FIDUCIARY DUTY

90.    Plaintiff asserts that Defendants violated their fiduciary duties through their decisions regarding how to apply forfeited contributions after the underlying contributions that comprised the forfeited contributions were paid to the Plan and, thus, had become Plan assets.

91. Defendants breached their fiduciary duties of loyalty and prudence when they chose to allocate forfeited amounts to reduce employer contributions rather than to pay administrative expenses given the circumstances of the Company during the relevant time period.

92. Specifically, as noted above, the Company was experiencing significant revenue generation. Thus, Defendants breached their fiduciary duties to the Plan and its participants by choosing, in their discretion, to reduce the Company's obligations rather than reduce the Plan's expenses.

93. Indeed, upon information and belief, Defendants ignored the significant revenue generation of the Company and instead automatically chose to utilize forfeited amounts to reduce employer contributions.

94. A prudent fiduciary in this particular context would have at minimum engaged in a reasoned and impartial decision-making process considering all relevant factors before determining how to use the forfeited funds in the best interest of the participants and beneficiaries. Defendants, upon information and belief, did not do this.

95. Rather, Defendants simply chose to benefit the Company only by using forfeited funds to reduce the Company's obligations regarding its matching contribution obligation.

96. This conduct constituted a breach of ERISA's duty of prudence and loyalty.

97. In short, the Company received a benefit amounting to millions of dollars in contribution expenses by electing to use Plan assets as a substitute for the Company's own future contributions to the plan.

98. Plaintiff, and the other members of the Class, are entitled to receive benefits in the amount of the difference between the value of their account currently, or as of the time their

account was distributed, and what their account would have been worth but for Defendants' breaches of fiduciary duties as described herein.

## CLASS ACTION ALLEGATIONS

99.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following proposed class ("Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time from six years preceding the filing of this Complaint through the date of judgment (the "Class Period").

100.    Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all members is impractical. For example, the 2023 Form 5500 lists 92,892 Plan "participants with account balances as of the end of the plan year."[18]

101.    There are questions of law and fact common to the class under Rule 23(a)(2) because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein with respect to the Plan and not as to any individual. Such common questions include whether Defendants breached their fiduciary duties to the Plan by allocating Plan assets in a manner that benefited Elevance while harming Plaintiff and the Plan participants.

102.    The claims of Plaintiff are typical of the claims of the Class she seeks to represent in accordance with Rule 23(a)(3). Plaintiff and the members of the Class participated in the Plan and suffered injuries as a result of the same alleged misconduct by Defendants.

103.    Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

---

[18] *Supra* note 4 at 2.

104.    Common questions of law and fact exist as to the Class that predominate over any individual questions and include, but are not limited to, the following:

a.    Whether Defendants are/were fiduciaries of the Plan;

b.    Whether Defendants breached their fiduciary duties of loyalty and prudence by engaging in the conduct described herein;

c.    The proper form of equitable and injunctive relief; and

d.    The proper measure of monetary relief.

105.    Plaintiff will fairly and adequately protect the interests of the Class under Rule 23(a)(4) as her interests are aligned with those of the members of the Class. Plaintiff has no interests adverse to the Class she seeks to represent and has retained competent and experienced counsel.

106.    This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

107.    In the alternative, certification under Rule 23(b)(3) is warranted, as no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

**COUNT I**
**BREACHES OF FIDUCIARY DUTY OF PRUDENCE**
**(Asserted against All Defendants)**

108.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

109.    At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

110.    As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

111.    The Defendants breached these fiduciary duties by failing to act solely in the best interest of the Plan participants regarding the use of the Plan's forfeiture accounts.

112.    The failure to engage in an appropriate and prudent process resulted in Plan participants incurring otherwise avoidable Plan administration costs.

113.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses due to the failure to utilize forfeited accounts to pay Plan expenses. Had the Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

114.    In making their decision regarding forfeitures, Defendants were motivated primarily by their own self-interest, and not that of the Plan's participants and beneficiaries.

115.    The Defendants knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of all other Defendants pursuant to 29 U.S.C. § 1105(a).

## COUNT II
### <u>BREACH OF FIDUCIARY DUTY OF LOYALTY</u>
**(Asserted against All Defendants)**

116.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

117.    At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

118.    As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

119.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), these Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

120.    Defendants have continually breached their duty of loyalty to the Plan and its participants by utilizing forfeited funds for the benefit of the Company instead of in the sole interest of the Plan and its participants and beneficiaries.

121.    Defendants used these Plan assets for the purpose of reducing the Company's own contributions to the Plan, thereby saving the Company millions of dollars each year at the expense of the Plan. Due to Defendants use of forfeited funds to decrease Company matching contributions, the Plan and its participants and beneficiaries incurred otherwise avoidable Plan expense deductions to their individual accounts.

122.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

123.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as deemed just and proper by the Court.

124.    Further, each Defendant is also liable for the breaches of all other Defendants pursuant to 29 U.S.C. § 1105(a).

### COUNT III
### BREACH OF ERISA'S ANTI-INUREMENT PROVISION
### (Asserted against Elevance)

125.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

126.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to

participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

127.    Because all the Plan's forfeited funds are initially placed in the Plan's trust, these forfeited funds are Plan assets.

128.    The Company's use of the forfeited funds to defray its own contributions to the Plan in order to save itself millions of dollars in funds that the Company would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of the Company in violation of 29 U.S.C. § 1103(c)(1).

129.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Elevance is liable to restore to the Plan all losses caused by its breaches of ERISA's anti-inurement provision and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

130.    Elevance is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT IV
### FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES
**(Asserted against Elevance and the Committee Defendants)**

131.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

132.    Upon information and belief, Elevance had the authority to appoint and remove members of the Committee and the duty to monitor the Committee and was aware that the Committee Defendants had critical responsibilities as fiduciaries of the Plan.

133.    Moreover, the Committee Defendants were responsible for appointing the Plan Administrator. As such, the Committee Defendants had the duty to monitor the Plan Administrator

especially in light of the fact that the Plan Administrator had critical responsibilities as fiduciaries of the Plan.

134.    In light of this authority, Elevance and the Committee Defendants had a duty to monitor the Committee Defendants and the Plan Administrator to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that they were not fulfilling those duties.

135.    Elevance also had a duty to ensure that the Committee Defendants possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan and reported regularly to Elevance.

136.    Elevance breached its fiduciary monitoring duties by, among other things:

(a)    Failing to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee Defendants' imprudent actions and omissions; and

(b)    Failing to remove Committee members whose performance was inadequate in that they continued to engage in conduct that benefited the Company, to the detriment of the Plan and Plan participants' retirement savings.

137.    Similarly, the Committee Defendants also had a duty to ensure that the Plan Administrator possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to the Committee Defendants.

138.    The Committee Defendants breached their fiduciary monitoring duties by, among other things:

    (a)    Failing to monitor and evaluate the performance of the Plan Administrator Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Plan Administrator Defendants' imprudent actions and omissions; and

    (b)    Failing to remove the Plan Administrator Defendants members whose performance was inadequate in that they continued to engage in conduct that benefited the Company, to the detriment of the Plan and Plan participants' retirement savings.

139.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses. Had the Defendants complied with their fiduciary obligations to monitor other Defendants that they appointed, the Plan would not have suffered these losses, and Plan Participants would have had more money available to them for their retirement.

## COUNT V
### SELF-DEALING
### (Asserted against All Defendants)

140.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

141.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

142.    Defendants violated this prohibition by choosing to substitute Plan assets for the Company's own contributions owed to the Plan, thereby saving Elevance millions of dollars in contribution costs.

143.    Defendants, therefore, dealt with the Plan assets in their own interest and for their own account.

144.    As a result of their self-dealing, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer contributions owing to the Plan, as well as all lost investment returns on those assets.

145.    Defendants are each personally liable under 29 U.S.C. § 1109(a) to restore to the Plan all assets and profits obtained through the use of Plan assets, and are each subject to other equitable or remedial relief as appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of himself and all other similarly situated members of the Class respectfully requests the Court grant the following relief:

A.    Designation of this action as a class action on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(1), or in the alternative, Fed. R. Civ. P. 23(b)(2);

B.    Designation of Plaintiff as representative of the Class;

C.    Designation of Plaintiff's counsel as class counsel for the Class;

D.    A declaratory judgment that the practices complained of herein are unlawful under ERISA;

E.    A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

F.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

G.    An order requiring the Company Defendants to disgorge all assets and profits secured by Defendants as a result of each violation of ERISA;

H.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

I.      An injunction against Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

J.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

K.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

L.      An award of pre-judgment interest;

M.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Class pursuant to 29 U.S.C. § 1132(g); and

N.      Such other and further relief as this Court deems just and proper.


Dated: May 22, 2025                       Respectfully submitted,

                                          **LYNCH CARPENTER, LLP**

                                          */s/ Anasuya E. Shekhar*
                                          Anasuya E. Shekhar (IN Bar No. 35360-53)
                                          Gerald D. Wells, III*
                                          Stephen E. Connolly*
                                          1133 Penn Avenue, 5th Floor
                                          Pittsburgh, PA 15222
                                          Telephone: (412) 322-9243
                                          Facsimile: (412)231-0246
                                          Email: jerry@lcllp.com
                                               steve@lcllp.com
                                               anasuya@lcllp.com

                                          **pro hac vice* motion forthcoming

                                          ***Counsel for Plaintiff and the Proposed Class***