UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

HOLLY HENDRICKSON,               )
                                 )
              Plaintiff,          )
                                 )
        v.                        )        No. 1:25-cv-01002-SEB-MG
                                 )
ELEVANCE HEALTH INC., et al.,    )
                                 )
              Defendants.         )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Now before the Court is Defendants' Motion to Dismiss [Dkt. 21].  Plaintiff Holly Hendrickson has brought this putative class action on behalf of herself and all those similarly situated, pursuant to §§ 409 and 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), alleging that Defendants Elevance Health Inc. ("Elevance Health"), Sean Gray ("Mr. Gray"), and Retirement Committee of ATH Holding Company, LLC (the "Committee") (collectively, "Defendants") improperly allocated forfeitures under the Elevance Health 401(k) Plan (the "Plan") for their own benefit.  Specifically, Plaintiff alleges that Defendants' application of the forfeitures to reduce Elevance Health's contributions to the Plan, instead of using those funds to further reduce or eliminate the amounts charged to Plan participants for Plan administrative expenses and costs at a time when a reasonable fiduciary would have done, breached duties imposed by ERISA.  This is one of many similar lawsuits proceeding throughout the country asserting ERISA claims against plan fiduciaries who applied forfeited funds to offset an employer's contributions.

1

Defendants seek dismissal on the grounds that the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) because ERISA does not regulate an employer's decisions about what benefits to provide its employees or whether to pay the costs of administering a plan.  Defendants argue that Plaintiff's lawsuit seeks to have Defendants pay more than the Plan participants were promised under the terms of the Plan, in contravention of settled law and regulatory guidance regarding the use of forfeited employer contributions in retirement plans.

The Court heard arguments on Defendants' Motion to Dismiss on June 11, 2026. Having now considered those arguments, the parties' written submissions, and the controlling principles of law, we hereby <u>GRANT</u> Defendants' Motion to Dismiss, without prejudice.

### Factual Background

The Plan is a defined contribution, individual account pension plan whose "purpose … is to help employees save for retirement and other long-range financial goals."  Compl. ¶¶ 43–44.  The Plan's sponsor is ATH Holding Company, LLC, a wholly owned subsidiary of Elevance Health, Inc. (and referred to collectively herein as "Elevance Health").  Compl. ¶¶ 43–45.  The Committee is the Plan administrator and named fiduciary.  *Id.* ¶¶ 15–20.  Elevance Health appoints individuals to serve on the Committee.  *Id.* ¶ 18.  Mr. Gray is listed on the Plan's 2022 and 2023 Form 5500 as the "Plan Administrator."  *Id.* ¶ 29.

Under the Plan, a participant's benefit is based, not on a specific formula, but on the assets in the participant's individual account, including gains or losses.  *Id.* ¶¶ 50–53;

2

*see* 29 U.S.C. § 1002(34).  The Plan is funded by a combination of Plan participants' voluntary wage withholdings and employer contributions.  The Plan provides for employer matching contributions of up to 5% of a Plan participant's eligible earnings.  Compl. ¶¶ 50–53.  The assets of the Plan are held in a "Trust Fund" that is separate from Elevance Health's assets and is managed by Fidelity Investments.  *Id.* ¶ 48.

Participants are always vested in their own contributions, and those contributions are not subject to forfeiture nor are they part of Plaintiff's claims.  With regard to the employer matching contributions and employer supplemental basic contributions, an employee typically becomes fully vested in those contributions after two years of employment.  *Id.* ¶¶ 55–56.  If a Plan participant terminates their employment before becoming fully vested, they forfeit any unvested employer matching contributions.  *Id.* ¶ 57.

The governing Plan documents prior to January 1, 2023 provided that forfeitures "will be applied to pay administrative expenses and/or reduce Employer Contributions for that Plan Year."  Exh. 2 (Amend. 1 to 2019 Plan) § 6.5.  Since January 1, 2023, the Plan has provided that "[a]mounts forfeited under the provisions of this Section during a Plan Year will be applied to pay administrative expenses and/or reduce Employer Contributions, as directed by the Company or its designee."  Exh. 3 (2023 Plan) § 6.5.  Section 8.5 of the Plan states that Elevance Health as "[t]he Employer is not required, but may, at its discretion, pay the expenses of administration of the Plan …."  If Elevance Health does not elect to pay such expenses in a given year, "the Trustee shall pay the expenses from the Trust Fund."  Exh. 1 (2019 Plan) § 8.2; Exh. 3 (2023 Plan) § 8.2.

Accordingly, unless Elevance Health elects to pay such Plan-related expenses, they will be paid by Plan participants.

In 2019, Defendants used Plan forfeitures to pay nearly $200,000 in Plan expenses with no funds expended for Elevance Health's contributions. *Id.* ¶ 83. In 2021, when the Plan had expenses of approximately $8.4 million, Defendants used Plan forfeitures to reduce Elevance Health's contribution obligations by approximately $5 million and to reduce Plan expenses by approximately $3 million. *Id.* ¶ 82. In 2022, Defendants used Plan forfeitures to reduce Elevance Health's obligations by approximately $8.9 million and just over $800,000 to offset Plan expenses of approximately $6.2 million. *Id.* ¶ 81. In 2023, the Plan had approximately $6.1 million in Plan expenses and Defendants used over $9.5 million in forfeitures to reduce company matching contribution requirements and less than $300,000 in forfeitures to pay Plan administrative expenses. *Id.* ¶ 60, ¶ 80. In total, between 2019 and 2023, Defendants used forfeitures to pay nearly $4.3 million in Plan-related expenses and to offset Elevance Health's contributions to the Plan by over $23 million. *See id.* ¶¶ 80–83; ¶ 85.

During this same period, Elevance Health was experiencing significant financial growth—between December 2022 and December 2024, for example, Elevance Health's total revenues increased by $20.4 billion. *Id.* ¶ 74. The complaint alleges that, in exercising their discretion to reduce Elevance Health's obligations rather than reduce the Plan's expenses, Defendants "ignored the significant revenue generation of the Company and instead automatically chose to utilize forfeited amounts to reduce employer contributions" when a prudent fiduciary would have "at a minimum engaged in a

reasoned and impartial decision-making process considering all relevant factors before determining how to use the forfeited funds in the best interest of the participants and beneficiaries." *Id.* ¶¶ 93–94.  Instead, "Defendants simply chose to benefit the Company only by using forfeited funds to reduce the Company's obligations regarding its matching contribution obligation." *Id.* ¶ 95.  The complaint alleges that Defendants did so "despite there being no risk that Elevance would be unable to otherwise financially satisfy its contribution obligations to the Plan." *Id.* ¶ 82.  Plaintiff further alleges that Plan forfeitures "are used as directed by the Plan Sponsor to reduce future employer contributions or to pay certain administrative expenses," which presents Defendants with a "clear conflict of interest." *Id.* ¶¶ 58–59.

Based on these facts, the complaint asserts five claims: breach of ERISA's fiduciary duties of prudence (Count I) and loyalty (Count II), 29 U.S.C. §§ 1104(a)(1)(A)–(B); breach of ERISA's "anti-inurement" provision, 29 U.S.C. § 1103(c)(1) (Count III); breach of duty to monitor the Committee and Mr. Gray as fiduciaries of the Plan (Count IV); and breach of ERISA's prohibition against "self-dealing" transactions, 29 U.S.C. § 1106(b) (Count V).  Defendant seeks dismissal of Plaintiff's complaint under Rule 12(b)(6), which motion is fully briefed and ripe for ruling.

## Legal Analysis

### I.    Rule 12(b)(6) Standard

Defendants have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In this procedural context, the Court must accept as true all well-

pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Discussion

Plaintiff concedes that this is not a case in which participants allege that they failed to receive benefits to which they were entitled under the Plan. Under the Plan, Elevance Health could, but was not required to pay administrative expenses. If Defendants chose to pay such expenses in a given year, they had the discretion under the Plan to use forfeitures to help offset Plan expenses, to offset future employer contributions, or some combination of both. Plaintiff alleges that, in 2019, Defendants allocated forfeitures exclusively toward paying down administrative expenses. In 2021 and beyond, Defendants allocated some forfeitures to pay down administrative expenses and a much larger amount to offset future employer contributions, with the amount allocated toward reducing administrative expenses being less each year despite Elevance Health's consistent financial growth. The theory of Plaintiff's case is that, given Elevance

Health's strong financial performance and significant cash on hand during that period, Defendants breached their obligations under ERISA by failing to allocate more forfeitures toward paying down administrative expenses, given that there was no risk that the company would be unable to satisfy its contribution obligations without the use of forfeitures.

### A.  Defendants' Preliminary Arguments

We turn first to address Defendants' three threshold arguments in support of their motion to dismiss.  First, Defendants argue that Plaintiff seeks to recover more than Plan participants are entitled to under the Plan, which contradicts the Plan document and ERISA principles.  Second, Defendants contend that Plaintiff's claims contradict well-settled law and regulations permitting the use of forfeitures to fund employer contributions.  Third, Defendants argue that Plaintiff solely challenges nonfiduciary conduct that falls outside ERISA's fiduciary duty and prohibited transactions provisions. For the following reasons, we are not persuaded that any of these threshold arguments is dispositive.

Defendants first argue that, because no provision in the Plan requires them to pay any of the Plan's administrative expenses and Plaintiff concedes that she received all benefits she was promised under the Plan terms, her claims should be dismissed for this reason alone.  It is true that ERISA's statutory scheme "is built around reliance on the face of written plan documents" to ensure the statute's "principal function" of "protect[ing] contractually defined benefits," *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (citation modified), and that "[n]othing in ERISA requires employers

7

to establish employee benefits plans" or "mandate[s] what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  However, because the law is clear that fiduciary duties "trump[ ] the instructions of a plan document," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014), the fact that the Plan may permit Defendants' actions is not itself dispositive, at least not where, as here, Plaintiff's legal theory is not that Defendants' are categorically required to pay participants' administrative expenses, but only that, once the company decides that at least some administrative expenses will be paid in a given Plan year, Defendants must abide by their fiduciary duties in allocating forfeitures between offsetting administrative expenses and employer contributions.

Next, Defendants point to proposed regulations, enacted regulations, and legislative history which they claim establish that the use of forfeitures to reduce employer contributions is permissible.  While these sources may be relevant in assessing the merits of Plaintiff's claims, they are also not dispositive.  As other courts considering this same argument have recognized, "proposed regulations lack the force of law, enacted regulations interpreting law do not bind the court, and legislative history documents are, at best, minimally persuasive evidence of congressional intent." *Enstrom v. SAS Ins. Inc.*, 820 F. Supp. 3d 410, 424 (E.D.N.C. 2026), *appeal docketed sub nom.*, *Stana v. SAS Inst., Inc.*, No. 26-1305 (4th Cir. Mar. 18, 2026).

Finally, Defendants contend that, under Plaintiff's legal theory, they would be required to use forfeitures to pay administrative expenses before offsetting employer contributions any year that Elevance Health was performing well financially, which

would override the discretion the Plan provides Elevance Health to decide whether to pay any administrative expenses in the first place. As such, Defendants contend that Plaintiff's challenge is in practical effect to the structure of the Plan itself, which is a "settlor" decision not subject to the ERISA fiduciary provisions Plaintiff contends were violated.

We agree that the Plan provides Elevance Health the discretion to choose not to pay any administrative expenses in a given year; this is a settlor decision. However, in each of the years covered by Plaintiff's lawsuit, Elevance Health apparently decided in its settlor capacity to pay at least some portion of administrative expenses and then the Committee exercised the discretion the Plan provides it to allocate forfeitures between paying administrative expenses and offsetting employer contributions. It is that allocation decision that Plaintiff challenges in this lawsuit, not the initial decision of whether to pay any administrative expenses in the first place, and case law makes clear that Defendants are subject to ERISA's fiduciary duty provisions when exercising such discretion. This does not, as Defendants argue, override Elevance Health's right under the Plan to avoid implicating fiduciary duties by deciding not to pay any administrative expenses, but once the decision is made to use forfeitures to pay at least some administrative expenses, that allocation decision involves "implementation" of the Plans terms and is thus a decision made in Defendants' fiduciary capacity.

As explained above, we do not find Defendants' threshold arguments to be dispositive in defense of the motion to dismiss. Accordingly, we proceed next to analyze in turn each of Plaintiff's individual claims.

### B.  Breach of Fiduciary Duties of Prudence and Loyalty (All Defendants)

Plaintiff claims that in choosing to use forfeitures to reduce Elevance Health's future contributions rather than paying administrative expenses at a time when there was no risk that the company would be unable to satisfy its contribution obligations without the use of forfeitures, Defendants violated their fiduciary duties of prudence and loyalty. To state a breach of fiduciary duty claim against Defendants, Plaintiff must plead facts plausibly alleging that (1) Defendants were acting in a fiduciary capacity; (2) they breached a fiduciary duty; and (3) the breach harmed the Plan.[1] *Appvion, Inc. Ret. Sav. & Empl. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 942–43 (7th Cir. 2024) (citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)).  Our analysis causes us to conclude that Plaintiff has failed to plausibly allege a breach of the fiduciary duties of prudence or loyalty.

### 1.  Duty of Prudence

Plaintiff claims that Defendants violated the duty of prudence by not using enough forfeitures to pay for Plan expenses.  The duty of prudence requires fiduciaries to act

---

[1] Plaintiff alleges that Defendants' actions harmed "the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur at least $20 million in expenses that could otherwise have been covered in whole or in part by forfeited funds."  Compl. ¶ 89.  Among other relief, Plaintiff seeks an order "compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations[.]"  *Id.* at ¶ F.  Plaintiff's allegations regarding harm to the Plan are at best cursory, and it is entirely unclear, at least based on the manner in which Plaintiff's legal theories were explained at oral argument, how Defendants' actions caused a reduction in Plan assets.  However, Defendants' motion to dismiss does not address this element of Plaintiff's breach of fiduciary duty claims; accordingly, we need not and do not consider the issue further.

"with the care, skill prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. ¶ 1104(a)(1)(B). Here, Plaintiff alleges that Defendants, ignoring Elevance Health's strong financial performance, "automatically chose to utilize forfeited amounts to reduce employer contributions" and "simply chose to benefit the Company only by using forfeited funds to reduce the Company's obligations regarding its matching contribution obligation" when a prudent fiduciary would have "at a minimum engaged in a reasoned and impartial decision-making process considering all relevant factors before determining how to use the forfeited funds in the best interest of the participants and beneficiaries." Compl. ¶¶ 93–95.

However, the facts averred by Plaintiff do not support a plausible inference that Defendants failed to apply a sufficiently fair decisionmaking process in making their forfeiture allocation decisions. In each of the years Plaintiff challenges, Defendants exercised their discretion to use a portion of the forfeitures toward paying down administrative expenses, a benefit above and beyond what the Plan terms required. In determining what portion of the forfeitures to allocate toward paying down administrative expenses, Defendants necessarily had to have engaged in at least some process of reasoning and deliberation. Thus, we do not find Plaintiff's cursory allegations that Defendants imprudently made an "automatic" choice to use forfeitures "only" toward offsetting employer contributions without any "reasoned and impartial decision-making process" to be sufficient to push the claim over the threshold from possible to plausible.

11

Plaintiff assumes an insufficient decision-making process and substantive unreasonableness based solely on Defendants' failure to allocate more forfeitures towards paying off administrative expenses at a time when the company had sufficient financial resources to do so without any risk that it would be unable to satisfy its matching contribution obligations.  However, Plaintiff's allegations at best show only that Defendants followed the Plan language and provided participants even *more* than what was technically required by the Plan.  Under these circumstances, the mere fact that Defendants could have allocated additional forfeitures toward administrative expenses without being at risk of defaulting on Elevance Health's matching contribution obligation, without any additional facts suggesting irregularities in the decision-making process to allocate forfeitures that would reveal that Defendants acted imprudently or in contravention of their duty of prudence is not sufficient to plausibly suggest a breach of the duty of prudence.

It is true that "facts detailing the investigative process are likely within the sole control of the trustee and other ERISA defendants and, consequently, 'an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she had no access.'"  *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-cv-01126-SB-SHK, 2021 WL 162643, at *3 (C.D. Cal. Jan. 15, 2021) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)).  "But the plaintiff *does* need to plead details 'support[ing] an inference that the defendant failed to conduct an adequate inquiry'" and "plausibly alleging a failure to fulfill the duty of prudence still requires more than simply *speculating* that an ERISA fiduciary might not have conducted the requisite inquiry."

12

*Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 927 (N.D. Cal. 2025).  Where, as here, Plan participants received all of their promised benefits and then some, the mere fact that Defendants had the financial resources to pay even more administrative expenses but chose not to do so is not sufficient to "invite the inference that the fiduciary actually engaged in imprudent conduct." *Id.*  Accordingly, Plaintiff's claim that Defendants breached their duty of prudence must be dismissed.

### 2.  Duty of Loyalty

Plaintiff also claims that Defendants' failure to use enough forfeitures to pay for Plan expenses violated their duty of loyalty.  A fiduciary's duty of loyalty requires it to discharge its "duties with respect to a plan solely in the interest of the participants and beneficiaries … for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  In other words, the fiduciary must "make any decisions in a fiduciary capacity with an eye single to the interests of the participants and beneficiaries." *DiFelice v. US Airways, Inc.*, 497 F.3d 410, 418–19 (4th Cir. 2007) (citation modified). Plaintiff here alleges that Defendants faced a choice between benefitting themselves (by using forfeitures to offset employer contributions) and benefiting Plan participants (by using forfeitures to pay administrative expenses), and, when faced with this conflict of interest, chose to benefit themselves rather than Plan participants (by allocating the vast majority of forfeitures each year toward offsetting future employer contributions rather than paying administrative expenses, despite there being no risk that Elevance Health could not otherwise satisfy its matching contribution obligations).

Most of the courts that have considered claims regarding allocation of forfeitures have rejected such claims by "reasoning that, '[w]hen (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses.'" *Enstrom*, 820 F. Supp. 3d at 425 (quoting *Polanco v. WPP Group USA, Inc.*, No. 24-cv-9548 (JGK), 2025 WL 3003060, at *4 (S.D.N.Y. Oct. 27, 2025)) (collecting cases).  Here, the Plan provided discretion to Defendants in how to allocate forfeitures and in the time period relevant to this litigation all forfeitures were used either to offset employer contributions or to pay down administrative expenses, albeit with a much larger percentage going toward the former than the latter.  In using forfeitures in this manner, Defendants complied with the Plan and in fact, Plan participants received an even greater benefit than the Plan's terms required, since the Plan specifically provides that Elevance Health is not required to pay any administrative expenses at all.

Plaintiff argues that in allocating almost all forfeitures toward offsetting employer contributions at a time when there was no risk that Elevance Health could not otherwise satisfy its contribution obligations, she has plausibly alleged that Defendants were not acting with an "eye single to the interests" of Plan participants and thus breached their duty of loyalty.  But using forfeitures to offset employer contributions still provided a benefit to Plan participants through the contributions Plan participants received and "ERISA does not create an exclusive duty to maximize pecuniary benefits." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (internal quotation marks

14

omitted); *accord Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 598 (8th Cir. 2022); *Foltz v. U.S. News & World Report, Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989); *cf. Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants.").

"As such, the fiduciary's duties are 'fulfilled where the fiduciary ensures that participants have received their *promised* benefits[,]'" *Shulak v. BMO Fin. Corp.*, No. 25-cv-02232, 2026 WL 879652, at *4 (N.D. Ill. Mar. 30, 2026) (quoting *Polanco*, 2025 WL 3003060, at *3), and "[a] duty of loyalty claim is implausible without plausible allegations that participants received less than the plan promised." *Enstrom*, 820 F. Supp. 3d at 426 n.2. Plaintiff's complaint contains no such allegations here. Thus, we find that Plaintiff has failed to plausibly allege a breach of the duty of loyalty.[2]

## B. Anti-Inurement (Elevance Health)

Plaintiff next claims that Elevance Health violated ERISA's anti-inurement provision by using forfeitures "to defray its own contributions to the Plan in order to save itself millions of dollars in funds that the Company would otherwise have to contribute to the Plan, caus[ing] the assets of the Plan to inure to the benefit of the Company ..."

---

[2] We acknowledge that some district courts in our circuit have denied motions to dismiss duty of loyalty claims where the plaintiffs have pleaded that the defendants had discretion in the use of forfeitures and chose to offset employer contributions rather than pay administrative expenses at a time when the employer was not otherwise at risk of being unable to satisfy its contribution obligations. *See Russell v. Ill. Tool Works, Inc.*, No. 22 CV 02492, 2026 WL 332662, at *5–*6 (N.D. Ill. Feb. 9, 2026); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 890–91 (C.D. Ill. June 30, 2025). However, these decisions are not binding on us, and we find that applying that same reasoning under the circumstances presented here, where Plan participants received more than required under the Plan terms and do not argue that the administrative expenses they incurred were otherwise unreasonable, would stretch the duty of loyalty beyond its legally enforceable bounds.

15

Compl. ¶ 128.  This claim is based on 29 U.S.C. § 1103(c)(1), which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  In other words, the anti-inurement provision "prohibits employers from misappropriating plan assets for their own benefit."  *Beck v. PACE Int'l Union*, 551 U.S. 96, 107 (2007).  This section "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants," *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999), and "demands only that plan assets be held for supplying benefits to plan participants."  *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004).  Moreover, "claims under the anti-inurement provision usually require reversion or diversion of plan assets to the sponsor."  *Hutchins*, 737 F. Supp. 3d at 864–65; *accord Aldridge v. Lily-Tulip, Inc. v. Salary Ret. Plan Benefits Committee*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants.").  Section 1103(c)(1) does not prohibit "incidental benefits" conferred upon an employer.  *Hughes Aircraft Co.*, 525 U.S. at 445–46.

Plaintiff's allegations in this lawsuit do not plausibly support a claim that Elevance Health violated ERISA's anti-inurement provision.  Plaintiff alleges that forfeitures were used to pay Plan benefits in the form of Elevance Health's matching contributions and to help defray at least some administrative expenses that would otherwise be borne by participants.  There is no allegation that any amounts owed to the Plan were removed

16

from the Plan. *See McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363, at *7 (N.D. Cal. Nov. 1, 2024) (recognizing that "anti-inurement claims require a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants" and that allegations that a defendant "received indirect and incidental benefits" are insufficient to state a claim) (citation omitted).

To the extent Plaintiff alleges that, in using the bulk of the forfeitures to offset employer contributions, Elevance Health saved "millions of dollars each year at the expense of the Plan" (Compl. ¶ 121), courts have held that the anti-inurement provision "cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective." *Holliday v. Xerox Corp.*, 732 F.2d 548, 551 (6th Cir. 1984). Plaintiff's complaint alleges nothing more than that.[3]

**C. Failure to Monitor (Elevance Health and Committee)**

Plaintiffs also claim that Elevance Health and the Committee breached their fiduciary duties by failing to monitor other fiduciaries' performance of their fiduciary duties. The parties agree that this claim rises and falls with Plaintiff's other breach of fiduciary duty claims. Because we have found that the complaint does not plausibly

---

[3] The primary case on which Plaintiff relies in opposition, *Rodriguez v. Intuit, Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024), is distinguishable. As Defendants highlight, in *Rodriguez*, key to the court's determination that the plaintiff had plausibly alleged a violation of the anti-inurement provision was the court's conclusion that the plan could plausibly be read to prohibit the use of forfeitures to reduce employer contributions. *Id.* at 946. There are no such allegations here.

17

allege breaches of Defendants' fiduciary duties, Plaintiff's failure-to-monitor claim likewise cannot survive dismissal.

### D.  Self-Dealing (All Defendants)

ERISA proscribes certain prohibited transactions in 29 U.S.C. § 1106.  Plaintiff's final claim is that Defendants violated the prohibition on self-dealing set forth in 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from "deal[ing] with the assets of the plan in [their] own interest or for [their] own account."  Plaintiff alleges that Defendants violated this prohibition "by choosing to substitute Plan assets for the Company's own contributions owed to the Plan, thereby saving Elevance millions of dollars in contribution costs."  Compl. ¶ 142.

Defendants seek dismissal of this claim on the grounds that Plaintiff has alleged only that "forfeitures remain in the Plan and are reallocated to other participant accounts to provide benefits under the Plan," which "is neither 'prohibited' nor a 'transaction'" under ERISA.  Defs.' Br. at 24.  We agree that Plaintiff's allegations, which involve only the movement of funds within the Plan and do not include any facts indicating that forfeitures were exchanged with another party, do not plausibly allege a "transaction" prohibited by 29 U.S.C. § 1106.  *See, e.g.*, *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772, at *11 (N.D. Ill. Jan. 26, 2026) (holding that "movement of funds inside a plan" does not "clearly fall within the types of 'transactions' prohibited by 29 U.S.C. § 1106); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 897 (C.D. Ill. 2025) (finding that movement of funds within a plan "does not fit neatly within the plain meaning of 'transaction'"); *McWashington v. Nordstrom, Inc.*, No. C24-1230 TSZ,

2025 WL 1736765, at *16 (W.D. Wash. June 23, 2025) ("When, as here, the forfeited funds have not been withdrawn from the Plan, but rather redistributed among participants' accounts, the type of self-dealing transaction that animated the enactment of ERISA § 406(b)(1) is not present.").

### E. Conclusion

For the above detailed reasons, we <u>GRANT WITHOUT PREJUDICE</u> Defendants' Motion to Dismiss.  Plaintiff shall have forty (40) days within which to amend her complaint to address the deficiencies identified herein, if possible.  If Plaintiff fails to do so, final judgment shall be entered.

IT IS SO ORDERED.

Date:  __7/28/2026_____            _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Stephen E. Connolly
Lynch Carpenter, LLP
sconnolly@faruqilaw.com

Deborah S. Davidson
Morgan Lewis & Bockius LLP
deborah.davidson@morganlewis.com

Jared Killeen
jared.killeen@morganlewis.com

Sean K. McMahan
Morgan Lewis & Bockius LLP
sean.mcmahan@morganlewis.com

Anasuya Elisa Shekhar
Lynch Carpenter, LLP
anasuya@lcllp.com

Gerald D Wells, III
Lynch Carpenter, LLP
jerry@lcllp.com